FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 JUN 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ARTIS JOHNSON, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 99-J-0882-S |
| SIGN BUILDERS, INC., | ) | |
| Defendant. | ) | |

ENTERED

JUN 21 2000

### **MEMORANDUM OPINION**

This cause comes before the Court is Defendant's Motion for summary judgment (doc. 12).

### **Undisputed Facts**

In the light most favorable to Plaintiff, the facts of this case are as follows: Artis Johnson ("Plaintiff"), an African-American, was employed at Sign Builders, Inc. ("Defendant") as a sign printer from 1984 to March 1998.[1] Deposition of Artis Johnson ("Johnson Depo.") at 10, 13.  During his employment, with the exception of a few years in the early 1990's, Plaintiff has worked alongside Mona Thrasher ("Thrasher").  When Plaintiff began his employment, he and Thrasher were co-workers. Johnson Depo. at 49.

---

[1] Plaintiff was employed full time with Defendant until September 1997 when he accepted a position at an Amoco station in Fairfield, Alabama. Johnson Depo. at 99.  Thereafter, he was employed by Defendant on a part time basis.

1

23

Thrasher then left her job at Sign Builders for a short period of time. *Id.* In her absence from Sign Builders, Thrasher and Plaintiff remained friends. Johnson Depo. at 50. Upon her return to Sign Builders, Thrasher was made supervisor of the department in which Plaintiff worked. Johnson Depo. at 60.

Plaintiff has known Thrasher since before he began his employment with Defendant. Johnson Depo. at 46. Prior to, during, and arguably after his employment[2] with Defendant, Plaintiff and Thrasher have maintained a "close personal relationship." *See* Affidavit of William Cairns at ¶ 4; Johnson Depo. at 48, 53-60. This relationship has led the two individuals to lend each other money, borrow each other's cars, share meals, and take several trips together. *See* Johnson Depo. at 53-60. Specifically, Plaintiff testified that he and Thrasher have previously taken trips to Biloxi, New Orleans and Florida. Johnson Depo. at 56, 57, 58. Thrasher has also lent Plaintiff up to $1,000 for the repairs of his car.[3] Depo. of Johnson at 54. Plaintiff further testified that he and Thrasher have on several occasions shared meals, one of which was as late as January of 1996.[4]

---

[2] Plaintiff testified that since he has left Sign Builders, he has on occasion returned to the building to visit his sister. On those occasions, he continues to have conversations of a presumably personal nature with Thrasher. Johnson Depo. at 122. Notably, Plaintiff still considers Thrasher a friend. Johnson Depo. at 54.

[3] The Court notes that this loan occurred during the period of time Thrasher was Plaintiff's supervisor, a time that Plaintiff contends he was faced with racial hostility from Ms. Thrasher.

[4] Plaintiff testified the that he asked Thrasher if she wanted to go to lunch in January 1996 because it was a co-workers birthday and because he "tries not to hold grudges." Johnson Depo. at 93. Plaintiff paid for Thrasher's meal on this occasion. *Id.*

Johnson Depo. at 93.

According to Plaintiff, immediately after Thrasher was promoted to supervisor she began to harass Plaintiff through the use of profanity and racially offensive language. Johnson Depo. at 63. Upon becoming Plaintiff's supervisor, Thrasher repeatedly told him to "kiss her ass" and to "go to hell." Johnson Depo. at 64. Plaintiff further alleges Thrasher has called him a "little black son of a bitch," "black mother fucker" and "sorry black ass." *Id.* Plaintiff testified this harassment was an "everyday thing for all these years." Johnson Depo. at 64, 132. In his deposition, Plaintiff acknowledged that he could have requested a transfer out of Thrasher's department but failed to do so because he was happy with the job." Johnson Depo. at 76. In fact, Plaintiff never once asked for a transfer during the entire eight year period during which he was subjected to Thrasher's alleged harassment. Johnson Depo. at 86.

Plaintiff maintains that he sought intervention from Mr. Cairns, the owner of Sign Builders, when he went and complained to him about the allegedly harassing conduct. Johnson Depo. at 73. Plaintiff can not recall whether his complaint to Mr. Cairns included Thrasher's use of racial slurs; Mr. Cairns maintains that Plaintiff did not. Johnson Depo. at 73-74; Cairns Aff. at ¶ 5. Regardless, Mr. Cairns and another member of management intervened in the situation and the harassment ceased for a period of time. Johnson Depo. at 76. Plaintiff twice complained in 1994 about Thrasher's behavior to Mr. Cairns but concedes he did not mention that racial overtures were included in the

profane and abusive language. Johnson Depo. at 79, 88. According to Plaintiff, he was not given the opportunity because Mr. Cairns would tell Plaintiff that it was up to Plaintiff and Thrasher to resolve the situation. *Id.* Mr. Cairns stated in his affidavit that he so instructed Plaintiff under the belief that these outbursts were somewhat personal in nature. *See* Cairns Aff. at ¶¶ 3, 5.

According to Plaintiff, he is the only employee of Sign Builders that was subjected to the racially hostile environment. Johnson Depo. at 65. In fact, Plaintiff states there was a "difference that you can see" in the way she treats him as opposed to his other co-workers. *Id.* Plaintiff alleges that it is because of this harassment that he quit his job with Defendant. Complaint at ¶ 5.

Around September 1997, Plaintiff applied for and accepted a part time position at an Amoco gas station in Fairfield, Alabama. Johnson Depo. at 99-100. He applied for the position at the insistence of his sister, who thought a job out in public would be good for him. Johnson Depo. at 100. In order to accommodate both employers, Plaintiff unilaterally decided to cut back his hours with Defendant. Johnson Depo. at 100.

Plaintiff's testimony regarding his intent for applying and accepting the position at the gas station contradicts itself. Initially, Plaintiff testified that he took the job with the intention of quitting Sign Builders because of the harassment. Johnson Depo. at 91. In fact, Plaintiff claimed that the only reason he did not quit at Sign Builders was because he "figured it was much easier for [him] to find a job if he had a job." *Id.* However, later in

the same deposition, Plaintiff testified that he never thought about quitting his job with Defendant until returning from his vacation in New Orleans in February 1998.[5] Johnson Depo. at 105, 117. Plaintiff later testified that he loved his job and did not want to quit, only contemplating quitting when the alleged harassment began and when he finally decided in February of 1998 to work full time at the Amoco station. Johnson Depo. at 119.

Plaintiff filed this present action April 9, 1999 complaining of violations of 42 U.S.C. § 1981, alleging that he was denied a raise due to his race, resulting in a hostile work environment that ultimately led to his constructive discharge. Complaint at ¶ 5. This motion for summary judgment, filed by Defendant March 15, 2000, followed (doc. 12).

## Standard of Review

Summary judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of proof on such motion. *See Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1294 (11th Cir. 1998)(*citing Celotex* 477 U.S.

---

[5] Plaintiff stated that it was his intention, upon his departure for New Orleans, to return to Sign Builders after his vacation. Johnson Depo. at 120.

at 323).

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Gonzalez,* 161 F.3d at 1294 (*citing Anderson*, 477 U.S. at 255.).

## **Legal Analysis**

To be actionable under 42 U.S.C. § 1981, a racially hostile environment must be both objectively and subjectively offensive, one that a reasonable person would find

sufficiently hostile or abusive to alter the terms and conditions of employment,[6] and one that the victim in fact did perceive to be so. *Faragher v. City of Boca Raton,* 524 U.S. 775,786, 118 S.Ct. 2275, 2283 (1998)(*citing Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22, 114 S.Ct.367, 370-371 (1993)). This is to say that Plaintiff has the burden of proving not only that he subjectively perceived his environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive. *Gupta v. Florida Board of Regents,* 2000 WL 633024 * 6 (11th Cir. May 17, 2000) (*citing Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1246 (11th Cir. 1999). Courts are instructed to look at the totality of the circumstances in determining whether the environment is sufficiently hostile or abusive. *See Mendoza* 195 F.3d at 1246.

Upon review of the record it is unclear whether Plaintiff subjectively viewed his working environment as *racially* hostile or abusive. Plaintiff testified at his deposition that he liked his job, that he remained friends with his alleged harasser, and that his complaints to the owner centered around abusive, though not necessarily racially charged, language. Finally, Plaintiff claims that the failure to receive a pay raise and his constructive discharge evidence the type of environment to which he was subjected.

---

[6] The Court recognizes that a tangible employment action, such as demotion or discharge, constitutes an alteration in the terms and conditions of the plaintiff's employment. *See Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1247 (11th Cir. 1998)(*citing Burlington Indus., Inc. v. Ellerth,* 118 S.Ct. 2257, 2268, 524 U.S. 742, 141 L.Ed.2d 633 (1998). However, because Plaintiff's claim for constructive discharge, discussed *infra,* fails it is not considered in this analysis.

However, Plaintiff stated in his deposition that it was his personal belief that his failure to receive a pay raise was not racially motivated. Johnson Depo. at 97. Additionally, although he claims he was constructively discharged from Defendant's employ, Plaintiff stated that he liked his job and planned on returning to it after his vacation. Even in the light most favorable to the Plaintiff, it seems to this Court that Plaintiff's grievances with his previous employment rest on the atmosphere in general, not one that is *racially* hostile or abusive.

Assuming however that Plaintiff did perceive the alleged harassment to be severe and pervasive, the evidence presented to the Court does not support a finding that, from an objective viewpoint, the alleged harassment was so frequent, severe, or pervasive to constitute actionable racial harassment.

The objective component of the hostile environment analysis is somewhat fact intensive. To aid in this determination, four factors are to be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance;[7] and (4) whether the conduct unreasonably interferes with the employee's job performance." *Gupta,* 2000 WL at *8 (internal citations omitted).

---

[7] Ever mindful of the Supreme Court's caution against allowing too broad a definition of hostile environment so that the claim operates as a general civility code, the Court holds today that the word "nigger" clearly constitutes far more than a mere offensive utterance and will always satisfy the third prong of this analysis.

8

In the light most favorable to the Plaintiff and absent any determinations of credibility at this stage of the litigation, the Court adopts Plaintiff's assertion that the allegedly harassing conduct was consistent and continuous during the period that Thrasher was Plaintiff's supervisor. *See* Johnson Depo. at 132. Accordingly, this Court finds that the frequency of the conduct sufficiently meets the first factor in determining whether the conduct was objectively hostile or abusive.

In the second prong, the Court must analyze the evidence offered by Plaintiff to determine whether the actions complained of were sufficiently severe to constitute a hostile working environment. Having reviewed the record as a whole in the light most favorable to the Plaintiff, this Court can not say that the conduct Plaintiff alleges was sufficiently severe so that a reasonable person would find this conduct hostile or abusive. A plaintiff who maintains a close personal relationship with another individual against whom plaintiff now claims caused plaintiff to be subjected to racial hostility or abuse, may not as a matter of law, sustain his or her burden of proving severe conduct. It is illogical at best to find conduct so severe that it falls outside the scope of workplace banter and within the parameters of conduct actionable under a hostile environment claim where the plaintiff himself readily excuses such behavior both during and after working hours. To hold otherwise would operate to undermine the laws of this Circuit, laws that have been so carefully crafted in an effort to insure that employment law does not become today's society's code of civility.

Finally, as to the fourth and final prong, the Court examines whether the conduct unreasonably interferes with the employees performance. *See Mendoza,* 195 F.3d at 1246. The question of whether hostile or abusive conduct unreasonably interferes with a plaintiff's performance necessarily implies both a subjective and objective element. The plaintiff must subjectively believe his or her job performance has been affected by the conduct of which he or she complains. The analysis then proceeds to determine whether such a belief is reasonable.

Though Plaintiff maintains he subjectively found his environment racially hostile, a review of the record uncovers a significant amount of inconsistencies regarding Plaintiff's subjective belief. First, Plaintiff contends that he was reprimanded for excessive absenteeism but that the cause for his absenteeism was the environment in which he worked. According to Plaintiff, the hostility he found at work caused him to become physically ill and therefore unable to work. Johnson Depo. at 83. Plaintiff also maintains that his environment caused him twice to attempt suicide, once in 1989[8] (Johnson Depo. at 22-23) and again in 1994 (Johnson Depo. at 25-27).[9] Though Plaintiff testified that his work environment has been continuously hostile, Plaintiff also testified he was not seeking the treatment of a psychiatrist because it's not as bad as it was in

---

[8] The Court notes the 1989 attempt on his own life comes not only before Thrasher became Plaintiff's supervisor but at a time prior to *any* allegations of hostility.

[9] Although Plaintiff maintains his work environment led to his attempts of suicide, Plaintiff has also cited a chemical imbalance that causes him sleeplessness. Johnson Depo. at 28.

10

1994; "it had got better."   Johnson Depo. at 123.

Plaintiff additionally offers two allegations of adverse employment action that, according to him, objectively evidence a hostile work environment.  Plaintiff asserts that Defendant's denial of Plaintiff's pay raise request and his constructive discharge constitute adverse employment actions that were the result of a racially hostile environment.

*Denial of Pay Raise:*

Plaintiff, in his brief in opposition to summary judgment, states: "the significance of the several occasions in which [Plaintiff] was denied a pay raise and his being given a smaller pay raise than promised is that it forms a small part of the hostile work environment and [] constitutes a tangible adverse employment action . . . render[ing] Sign Builders strictly liable for the harassment."  Plaintiff's Brief in Opposition to Summary Judgment ("Plaintiff's Brief") at 12.  This Court disagrees.

One of the fundamental tenets of a hostile environment claim is that the actions complained of must be motivated by unlawful racial animus.  This is to say that a litigant seeking remedy for a working environment made intolerable because of co-workers and/or supervisor's offensive conduct must show the Court that this conduct was improperly motivated by the litigant's race.  Accordingly, a plaintiff who concedes that the tangible employment action was not the result of race discrimination and/or animosity can not, as Plaintiff in the case at bar so attempts, mount his claim based on such an

11

action. *See* Johnson Depo. at 97.[10] Not only does such a claim defy logic, it is directly at odds with the well established law of the Eleventh Circuit.

*Constructive Discharge*

Plaintiff also claims that he was constructively discharged by Defendant. The Eleventh Circuit has instructed that in order to prove constructive discharge, an employee "must demonstrate that his working conditions were so intolerable that a reasonable person in his position would be compelled to resign." *Graham v. State Farm Insurance Company,* 193 F.3d 1274, 1284 (11th Cir. 1999)(citing *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir.1993)). This determination is made without regard to plaintiff's subjective feelings about his employer's actions. *Doe v. Dekalb County School District,* 145 F.3d 1441, 1450 (11th Cir. 1998)(internal citations omitted). Under the doctrine of constructive discharge, "[t]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer ... is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Id.*

A review of the record uncovers Plaintiff's testimony that things started to get

---

[10] With respect to Plaintiff's failure to get his requested pay raise, Plaintiff testified:
"Q: Do you believe that has anything to do with your race?"
"A: No, sir"
"Q: Okay. Why do you think you didn't get that raise?"
"A: I don't really know"
Johnson Depo. at 97.

worse in and around 1994. Johnson Depo. at 73-76. Based on Plaintiff's testimony, it seems to the Court that the pinnacle of the racial abuse and hostility occurred some four years before Plaintiff's conditions became so intolerable that he was forced to resign. Plaintiff argues that the fact that he continued employment with Defendant for a period of eight years while Thrasher was his supervisor and subjecting him to allegedly harassing behavior is not fatal to his claim of constructive discharge. *See* Plaintiff's Brief at 8. This Court disagrees. A plaintiff can not, as a matter of law, maintain an action for constructive discharge where such an individual has continued employment under allegedly continuously harassing conditions for a period of several years. Though Plaintiff cites to this Court several constructive discharge cases establishing the law in this Circuit, *see* Plaintiff's Brief at 7, not one of them stated a claim where the plaintiff maintained employment for such an extensive period.

This holding is especially sound in light of Plaintiff's own testimony that he was happy on the job to which he was assigned. Johnson Depo. at 76. In *Henson v. City of Dundee*, 682 F.2d at 908, the Eleventh Circuit rejected Plaintiff's claim of constructive discharge where the plaintiff had, like the Plaintiff here, expressed satisfaction with her job. In reaching its decision, the Court held that the District Court's finding that the plaintiff's resignation was unrelated to the alleged harassment was not clearly erroneous where the plaintiff cited "work conditions and job security" as reasons for leaving the job she "sincerely enjoyed." *Id.* In the case at bar, Plaintiff told Thrasher he intended to

13

quit but is not sure whether he told her why he was quitting. Johnson Depo. at 129.

Plaintiff's decision to leave Sign Builders only after he was informed that there was a full time position available to him at the Amoco, *see* Johnson Depo. at 105, in addition to Plaintiff's testimony that he was happy with his job, as well as Plaintiff's extended employment despite his allegations of a hostile environment, is fatal to his claim of constructive discharge. The Court having failed to find adverse employment action on the part of Defendant, need not continue with an analysis of liability.

### Conclusion

Based on the foregoing, and in conformity with the order issued contemporaneously with this opinion, the Court is of the opinion that Defendant's motion for summary judgment is due to be GRANTED.

**DONE** and **ORDERED** this 20 day of June, 2000.

Inge P. Johnson
U.S. District Judge